# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LUCIO M. PACHECO,

                Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 2:16-CV-01056
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Jolson

## REPORT AND RECOMMENDATION

Plaintiff, Lucio Manuel Pacheco, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** this case under Sentence Four of § 405(g).

## I.    BACKGROUND

Plaintiff protectively applied for benefits on January 11, 2011, alleging disability due to a back injury, a fractured left foot, numbness in his left leg, radiculopathy, arthritis, depression, and high blood pressure. (Doc. 6, Tr. 335–41, 415). Plaintiff initially alleged an onset date of October 26, 2009, but later amended that date to September 1, 2010. (Doc. 6, Tr. 369). Plaintiff's last-insured date was December 31, 2014. (*Id.*, Tr. 154, 411).

After initial administrative denials of Plaintiff's claims, Administrative Law Judge Paul Yerian ("the ALJ") heard the case on October 18, 2012. (*Id.*, Tr. 114–53). On February 15, 2013, the ALJ issued a decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*, Tr. 188–201). Plaintiff disagreed and requested a review of the

1

Hearing Decision on April 22, 2013. (*Id.*, Tr. 270). The Appeals Council reviewed and remanded the case to the ALJ. (*Id.*, Tr. 209–11).

The ALJ held a supplemental hearing at which Plaintiff and a Vocational Expert ("VE") testified. (*Id.*, Tr. 49–113). On June 30, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*, Tr. 21–40). Plaintiff again filed a Request for Review of the Hearing Decision. (*Id.*, Tr. 517–24; *id.*, Tr. 1–8). That request was denied, and the Appeals Council adopted the ALJ's decision as the Commissioner's final decision. (*Id.*).

Plaintiff filed this case on November 4, 2016, and the Commissioner filed the administrative record on January 12, 2017. (Doc. 6). Plaintiff filed a Statement of Specific Errors on March 13, 2017 (Doc. 9), the Commissioner responded on April 24, 2017 (Doc. 10), and Plaintiff replied on May 8, 2017 (Doc. 11).

### A. Personal Background

Plaintiff was born in December 1965 (Doc. 6, Tr. 335), making him 49-years-old on his alleged onset date. (*Id.*, Tr. 38). He has a high school education and work experience as an ironworker, packager, material handler, and mixer operator. (*Id.*, Tr. 416).

### B. Relevant Testimony

Plaintiff testified at the April 9, 2015, administrative hearing that he lives in a two-story house with his fiancé. (*Id.*, Tr. 56-57). He testified that he has a driver's license but not a car, and last drove in October 2014. (*Id.*, Tr. 57). He further testified that his pain inhibits his ability to focus and causes depression; he experiences pain in his lower back, bottom, and the back side of his left leg is tight down to his ankle. (*Id.*, Tr. 65). At the time of the hearing, Plaintiff was prescribed Percocet, Oxycontin, and Fentanyl for pain and Cymblata for depression. (*Id.*, Tr.

66–67). He also takes prescribed medications for hypertension and high cholesterol, and Gabapentin for his leg. (*Id.*, Tr. 70–71). When asked to estimate his physical abilities, he testified that he could walk half of a block without his cane. (*Id.*, Tr. 76). Then he would have to sit and would need to change position within 20 minutes. (*Id.*, Tr. 76–77).

During a typical day, Plaintiff wakes up based on when he needs to take his medication—sometimes at 8:00 a.m., other times between 9:00 and 10:00 a.m. (*Id.*, Tr. 74). According to Plaintiff's testimony, he does not do housework; his fiancé does it all (*id.*, Tr. 78); his friends check in on him, but he does not visit them (*id.*, Tr. 79.); and while he sometimes goes grocery shopping, he mostly stays in the car (*id.*, Tr. 81–82). In addition, Plaintiff testified that he watches English language television with subtitles and uses the internet once a week. (*Id.*, Tr. 82–83).

The vocational expert testified that a hypothetical person of similar age and education as Plaintiff with a limitation of light exertional work could not perform Plaintiff's past job, but could perform other jobs available in the national economy such as a packager, inspector or assembler. (*Id.*, Tr. 106–07). In addition, the vocational expert testified that a hypothetical person of similar age and education as Plaintiff was limited to simple, repetitive tasks that would not involve strict production quotas or a fast assembly line work pace, the assembly work could not be performed. (*Id.*, Tr. 107). When asked to provide an additional occupation Plaintiff could perform with that above limitation, the VE testified that Plaintiff could work as a folder. (*Id.*).

**C. Relevant Medical Evidence**

    *1. Scott Lewis Donaldson, Ph.D.*

Dr. Donaldson evaluated Plaintiff for disability purposes in May 2011. (*Id.*, Tr. 753–58). When asked why he was applying for Social Security benefits, Plaintiff replied, "I can't move

my body. I have nerve root damage in L4 and L5 since two years ago. I have an ankle tear." (*Id.*, Tr. 753). Dr. Donaldson noted that Plaintiff "was agitated, reserved and yet cooperative during this evaluation, as if in a great deal of pain." (*Id.*). Plaintiff reported that he frequently experiences feelings of helplessness, worthlessness, mood swings, diminished interest in activities, weight loss, insomnia, psychomotor agitation, fatigue, and lack of concentration. (*Id.*, Tr. 755). Plaintiff had intact memory for past and recent events, reported that he got along well with neighbors, store clerks, and people in public, and had many friends. (*Id.*). Plaintiff further reported that he walked short distances, watched television, sometimes cooked, sometimes grocery shopped, and drove. (*Id.*).

Dr. Donaldson diagnosed Plaintiff with dysthymic disorder and generalized anxiety disorder. (*Id.*, Tr. 756). Dr. Donaldson opined that Plaintiff's ability to understand, remember, and carry out instructions "is not likely to be limited" and his ability to maintain attention and concentration "does not appear to be limited or problematic." (*Id.*) Based upon Plaintiff's mental status, psychological components of chronic pain, as well as his symptoms of mood and anxiety disorders, Dr. Donaldson believed that Plaintiff's "response to work pressures and demands may be limited." (*Id.*).

### 2. *Lee Howard, Ph.D.*

In June 2011, Dr. Howard evaluated Plaintiff on behalf of the Bureau of Workers Compensation for consideration of a psychological claim allowance. (*Id.*, Tr. 773–93). Plaintiff reported that he experienced depression four days per week, has crying spells almost every morning, depression with changes in sleeping patterns, irritability, loss of pleasure, and anxiety with symptoms of nervousness, trembling hands, and fear of losing control. (*Id.*, Tr. 779–82). Plaintiff's social presentation was within the normal range, and Plaintiff reported that he lived

4

with his girlfriend of six years and that their relationship was "excellent." (*Id.*, Tr. 780). Plaintiff stated that he watched the news, went out in his yard, read books, and cooked. (*Id.*). He also drove and took care of his personal hygiene. (*Id.*, Tr. 781). Dr. Howard observed that Plaintiff was appropriately attired and groomed, fully oriented, and had relevant, goal-directed, and coherent thought. (*Id.*, 782–83).

Dr. Howard administered the Minnesota Multiphasic Personality Inventory II ("MMPI-2") assessment, which indicated depression and anxiety in the "severe range." (*Id.*, Tr. 787). Dr. Howard also opined that this assessment was "valid and interpretable without evidence of exaggeration and/or symptom magnification." (*Id.*). Dr. Howard assessed that Plaintiff suffered from depressive disorder, NOS, although "the frequency reported is more consistent with a dysthymic disorder, but he has not yet met the length requirement per DSM IV," and assigned him a Global Assessment of Functioning ("GAF") score of 70. (*Id.*, Tr. 788). Dr. Howard recommended that Plaintiff receive psychotherapy sessions and be evaluated for potential anti-depressant medication. (*Id.*, 788–89).

### 3. *Vijayjumar B. Balraj, M.A. Ph.D.*

Dr. Balraj evaluated Plaintiff in March 2012 to determine if he was an appropriate candidate for pain management with opiates. Dr. Balraj concluded that Plaintiff was a suitable candidate for pain management; however, would likely benefit from psychotherapy. (*Id.*, Tr. 842–43).

### 4. *Stephen Halmi, Psy.D.*

In July 2012, Dr. Halmi evaluated Plaintiff on behalf of Plaintiff's attorney to determine if he suffers a diagnosable psychological condition. (*Id.*, Tr. 847-62). Dr. Halmi noted that Plaintiff appeared depressed and had a flat affect, but maintained appropriate eye contact, and

5

was prompt, open, forthcoming, well-groomed, neat, polite, alert, and fully oriented. (*Id.*, Tr. 855–57). Plaintiff maintained adequate attention and concentration to complete the evaluation, and could repeat seven digits forward and three backward, perform serial sevens with only one error, and repeat and recall four of four objects. (*Id.*). Plaintiff did, however, have difficulty with mathematical calculations and abstract reasoning. (*Id.*). Plaintiff reported that he could care for his personal needs, could drive short distances, and could read, write, and handle money. (*Id.*). He stated that he did not complete household chores due to physical pain and that, while he had friends, he did not see them due to his physical impairments. (*Id.*). He reported that he did not have a history of problems getting along with others and did not have problems learning at his previous jobs. (*Id.*). Plaintiff was also administered the MMPI-2 personality assessment. (*Id.*, Tr. 857–59). Dr. Halmi diagnosed Plaintiff with major depressive disorder and anxiety disorder, NOS. (*Id.*, Tr. 860). Dr. Halmi concluded that Plaintiff is "temporarily and totally disabled from working in any capacity" due to his depression and anxiety. (*Id.*, Tr. 862). He added that Plaintiff's "symptoms of emotional lability, reduced frustration tolerance and low motivation to engage in productive activities, are all symptoms that prevent him from performing work." (*Id.*).

  5. *Frank Orosz, Ph.D./Denise Rabold, Ph.D., State Agency Review*

State agency psychologist, Dr. Orosz, reviewed the record on behalf of the Ohio Bureau of Disability Determination in May 2011. (*Id.* at Tr. 154–61). Dr. Orosz determined that Plaintiff had mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. (*Id.* at Tr. 159–60). Dr. Orosz found Plaintiff's allegations were partially credible. (*Id.* at Tr. 161).

Dr. Orosz concluded that Plaintiff's medically determinable impairment of an affective disorder is not severe, noting that Plaintiff reports having lots of friends and no problems relating to teachers, co-workers, or supervisors. (*Id.* at Tr. 160). Plaintiff reported his main difficulties as physical and he has not had any significant treatment for mental health concerns, and limitations in activity of daily living are secondary to physical complaints. (*Id.*). Dr. Orosz also noted that Plaintiff was cooperative and appropriate during the consultative examination and was able to attend the examination alone. (*Id.* at Tr. 160).

In October 2011, another state agency psychologist, Dr. Rabold, reviewed the record and affirmed Dr. Orosz's opinion. (*Id.* at Tr. 173–75).

**D. The Administrative Decisions**

As noted, Plaintiff filed his application for disability insurance benefits in 2011. The ALJ denied that application under the controlling five-step sequential evaluation. *See* 20 C.F.R. §404.1520(a)(4); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act. (*Id.*, Tr. 188–201). The decision was based, in part, on his finding that Plaintiff could perform a limited range of sedentary work, except that he can frequently climb stairs, ramps and frequently crouch and occasionally climb ladders, ropes, and scaffolds and occasionally stoop, kneel, and crawl. (*Id.*, Tr. 195). The ALJ concluded that Plaintiff could perform a significant number of sedentary jobs available in the national economy. (*Id.*, Tr. 199–200).

The Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ. (*Id.*, Tr. 208–12, 279–80).

On remand, Plaintiff's application and evidence again proceeded to a hearing before ALJ Yerian. In the decision at issue here, the ALJ concluded at step two that Plaintiff had severe

impairments, namely, "degenerative disc disease of his lumbar spine with radiculopathy, osteoarthritis of his left acromioclavicular joint, a history of talofibular tear of the left ankle and left tibial tenosynovitis." (*Id.*, Tr. 23). The ALJ determined that, "[b]ecause the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" extended episodes of decompensation, they are not severe (20 CFR 404.1520a(d)(l) and 416.920a(d)(l))." (*Id.*, Tr. 28).

At step three, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments. (*Id.*, Tr. 29).

At step four, the ALJ ultimately found that Plaintiff retained the residual functional capacity (RFC) to perform sedentary exertional work. (*Id.*). The ALJ opined that because Plaintiff is limited to sedentary exertional work, he is unable to perform his past relevant work as an ironworker, material handler, or mixer operator. (*Id.*, Tr. 38). The ALJ next found that there are jobs that Plaintiff can perform such as a packager, inspector, and assembler, which were not precluded despite his RFC finding. (*Id.*, Tr. 39). He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*, Tr. 39–40).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff has assigned four errors in this case. (Doc. 9).

### A. Plaintiff's Mental RFC (Issue 1)

Plaintiff alleges in his first assignment of error that the ALJ erred at step two of the sequential analysis by failing to classify his mental impairments as "severe." Plaintiff further argues that the mistake constitutes reversible error because the ALJ failed to consider Plaintiff's mental impairments when crafting the RFC at step four. (Doc. 9 at 10). The Commissioner responds that "[w]hile Plaintiff was diagnosed with mental impairments, the ALJ reasonably concluded that the evidence showed that Plaintiff did not have any more than minimal limitations due to these [mental] impairments." (Doc. 10 at 3). The undersigned agrees with Plaintiff that the ALJ erred.

Step two of the sequential analysis—determining whether the claimant has a severe impairment—creates "a *de minimis* hurdle in the disability determination process.... Under the ... *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). However, "once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir.

2003) (citation omitted).  Consequently, "when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'"  *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting *Maziarz*, 837 F.2d at 244 (6th Cir. 1987)).

Here, at step two, the ALJ found that Plaintiff had severe physical impairments. However, when evaluating Plaintiff's mental impairments, the ALJ concluded that any impairment was "not severe" because Plaintiff's mental impairments "do not cause more than minimal limitation in his ability to perform mental work activities."  (Tr. 24.)  As noted above, all of the examining mental health experts, Dr. Donaldson, Dr. Howard and Dr. Halmi, diagnosed Plaintiff with mental impairments, which affect Plaintiff's ability to perform work-related activities.  (Doc. 6, Tr. 756, 788, 860).  In addition, when Dr. Balraj examined Plaintiff to see if he was an appropriate candidate for pain management, Dr. Balraj concluded that Plaintiff likely would benefit from psychotherapy.  (Doc. 6, Tr. 843).

In classifying Plaintiff's mental limitations as non-severe, the ALJ gave "minimal weight" to the opinions of the doctors who diagnosed Plaintiff with mental health disorders.  (Tr. 25–26).  The ALJ instead relied upon the opinions of the state agency reviewers, Dr. Orosz and Dr. Rabold.  (Doc. 6, Tr. 28).  Dr. Orosz completed a case analysis as to Plaintiff's mental impairments form at the request of the state agency on May 16, 2011, the same month as Dr. Donaldson's assessment of May 4, 2011, but prior to Dr. Howard's, Dr. Balraj's, and Dr. Halmi's evaluations.  Dr. Rabold completed her assessment in October 2011—also before Dr. Balraj's and Dr. Halmi's evaluations.  The ALJ found these assessments were entitled to considerable deference as they were "well supported by the evidence of the record as a whole," even though the records they reviewed were incomplete.  (*Id.*).

Considering the foregoing, the undersigned is reluctant to find that substantial evidence supports the ALJ's non-severity determination. But even assuming that the non-severe classification is correct, the ALJ erred. The regulations provide that if a claimant has more than one impairment, the Commissioner "will consider all . . . medically determinable impairments . . . including [] medically determinable impairments that are not 'severe'" when assessing a claimant's RFC. 20 C.F.R. § 404.1545(e). Thus, despite finding Plaintiff's mental limitations non-severe at step two, the ALJ still needed to consider Plaintiff's mental limitations at step four.

In fact, the ALJ himself acknowledged that the considerations at step two and four differ:

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" extended episodes of decompensation, they are not severe (20 CFR 404.1520a(d)(l) and 416.920a(d)(l)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation found in the "paragraph B" mental function analysis.

(Doc. 6, Tr. 28–29.)

Despite this acknowledgement, the ALJ's decision at step four does not indicate that he considered Plaintiff's mental impairments when crafting Plaintiff's RFC. Indeed, such discussion is wholly absent, and the RFC does not account for any mental limitations. The RFC limits Plaintiff's abilities physically, and, because Spanish is Plaintiff's first language, the ALJ found Plaintiff "best suited for work where instructions can be provided by demonstration or by oral instruction." (*Id.*, Tr. 34).

11

Further, Social Security Ruling 96-8p requires that the ALJ's RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p further provides:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

(*Id.*). In his RFC assessment, the ALJ is also required to include "a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." (*Id.*). With regard to Plaintiff's mental limitations, all of this is missing from the ALJ's decision.

Of note, the Commissioner does not argue that the ALJ considered Plaintiff's mental limitations at step four. Instead, she argues that "the ALJ reasonably determined that Plaintiff did not have any severe mental impairments and, as a result, did not include any mental restrictions in Plaintiff's RFC." (Doc. 10 at 3). The ALJ, however, was required to consider Plaintiff's mental limitations at step four—it's not enough that he considered them non-severe at step two. Consequently, the undersigned recommends remand. *Johnson v. Berryhill*, No. 1:16-CV-00135-HBB, 2017 U.S. Dist. LEXIS 72521 (W.D. Ky. May 11, 2017) (non-disability finding reversed and remanded because "there is no indication in the records that the ALJ considered the limitations and restrictions imposed by all of Plaintiff's impairments, both severe and non-severe in the sequential evaluation process"); *Jamison v. Comm'r of Soc. Sec.*, No. 1:07-cv-152, 2008 U.S. Dist. LEXIS 123937, at *23–24 (S.D. Ohio June 12, 2008) ("[B]ecause it is

12

not clear that the ALJ considered plaintiff's [non-severe] impairment at the other steps of the sequential evaluation process . . . this case [should] be revered and remanded for further development and clarification[.]").

**B. Remaining Assignments of Error (Issues 2–4)**

Plaintiff raises three additional assignments of error. The Court's decision to reverse and remand on Plaintiff's first assignment of error alleviates the need for analysis of Plaintiff's remaining assignments of error. Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignments of error if appropriate.

**IV. CONCLUSION**

Based on the foregoing, the undersigned concludes that the ALJ's residual functional capacity finding is not supported by substantial evidence and it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding. The Court, therefore, reverses the decision of the Commissioner to deny Plaintiff's disability insurance benefits and **REMANDS** the case under sentence four of 42 U.S.C. § 405(g) due to the issues addressed above.

On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

**V. PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with

supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.

Date: October 27, 2017                                                       /s/ Kimberly A. Jolson
                                                                                                   KIMBERLY A. JOLSON
                                                                                UNITED STATES MAGISTRATE JUDGE